# Wallace v. Norris.

May 24, 1949.

Charles W. Anderson, Jr., Benjamin F. Shobe and Woodward, Dawson, Hobson & Fulton for appellant.

Harry E. Tincher and Joseph J. Hancock for appellee.

OPINION OF THE COURT BY JUDGE HELM—Reversing.

At the close of the evidence, the trial court directed a verdict for the defendant. This appeal is from the judgment entered on that verdict.

The appellant, Felix Wallace, while walking along the sidewalk on the east side of Eighth Street in Louisville, was injured by the body of appellee's truck, which came off its chassis, careened across the street, up onto the sidewalk and struck him.

Appellant in his petition plead:

"Plaintiff states that on or about the 17th day of May, 1946, at or about 9:30 a. m., while in the employment of the United States Postal Department as a mail carrier and * * * delivering mail on Eighth Street, a public highway in Louisville * * *, he was walking in front of premises located at or about 909 South Eighth Street, when a truck owned and operated by the defendant, Crescent Hill Ice Company, was being operated northwardly on Eighth Street in such a careless, reckless and negligent manner and at such an excessive rate of speed that the body on the chassis of said truck was caused to be thrown from the chassis into the street and upon the pavement where this plaintiff was walking, thereby causing the body of said truck to strike this plaintiff * * *, causing this plaintiff to be severely and painfully injured * * *.

"* * * says that at the time of the accident herein complained of the defendant, Crescent Hill Ice Company, operated its delivery truck * * *, by and through its * * * employee, the driver of the truck, in the course and scope of his employment and upon the business of the said Crescent Hill Ice Company; that the said truck at the time of the accident herein complained of was being operated at a high, dangerous and reckless rate of speed and without due regard for the safety of the plaintiff herein; that the defendant, by and through its * * * employee, the operator of the truck, was keeping no lookout ahead and did not have the * * * truck under reasonable or any control * * *.

"Plaintiff further says that at the time of the accident herein complained of, the defendant was operating * * * a defective and mechanically unsafe motor vehicle, in that the body of the truck was loose and that the defendant knew that the body of the truck was loose and insecure, or by the exercise of ordinary care could have known that the body of the delivery truck herein above complained of was loose and insecure."

Appellant, 36 years of age, a mail carrier, was walking along the sidewalk about 9 a. m., May 17, 1946, when he was struck by the body of a truck belonging to appellee. At the trial appellant stated that he had stopped

momentarily, when he heard a grating sound, like metal scraping, turned his head and saw a truck body, which knocked him up in the air. He said: "This was a loud sound and I was supposed to be protected on the sidewalk and I wasn't wondering about the noise. * * I didn't hear anything but scraping. * * I hear the sound of a truck running fast. * * * I snapped my head up to see what it was about and it was on me then. * * * It knocked me up in the air and I fell inside the truck. * * * The momentum of the truck body carried on and hit the brick wall, careened back and went back into the middle of Eighth Street, but I shot out of the back of it because it was an open-back truck. * * * I was knocked out momentarily, but I regained my senses enough to look around and I saw this truck body sitting out in the street."

Floyd Stewart stated, "I was driving behind the truck and the bed jumped off and he was on the sidewalk and the bed jumped off and hit him." The truck "was going about forty miles an hour." Stewart was traveling "approximately thirty feet behind the truck." He stated, "I blew my horn for him to slow down because I saw the body of the truck zigzagging. * * * The body came off and dumped over. * * The bed dumped off and I pulled around and went on * * * because I was on a service call and didn't have time to stop."

William Griffith, driver for appellee, stated that he was delivering ice for appellee; that he had started out with eight blocks, weighing 315 pounds each; that when he started to town along Eighth Street he had one block and about 100 pounds; that he was driving on his right side of the street between Kentucky and a short street, the name of which he didn't remember. He stated, "There was a truck there and the mailman"; that he was going "about twenty-five or twenty-seven miles an hour. * * * I think it had been raining. * * * There was a rough place in the street and I hit that rough place. * * * The mailman had his head down, looking in the mail. The truck made so much noise, * * * I guess it was the muffler that was off the truck that was making the noise * * *, I didn't hear the bed when it came loose. * * * A man pointed to me and I looked back and the body was off and the mailman was about seven and a half feet from the

curb; that body was not loose to my knowing." After the body came off, he drove about forty-five feet; "I went back there and looked and I wouldn't move the truck, I let it sit there, and a policeman came and the mailman was lying near the gutter."

Appellee, Arthur Norris, stated that he was doing business in the name of Crescent Hill Ice Co.; that the truck in question was a 1½ ton 1937 Dodge; that the body was about 3½ feet high, 9 feet long and 5 feet wide; that it was attached to the chassis of the truck by ½ inch U-bolts at the back and front of the body; that he had observed this truck and his other trucks the afternoon before the accident but saw nothing wrong with them; that Jess Woolridge was employed to inspect the trucks. Norris went to the scene of the accident. He stated: "The U-bolts that belonged in the front weren't there. * * * They showed where they broke off. * * * There wasn't but one there. I don't know where it went to." He said the back bolts showed "breakage" and, further, "When that bolt happens to break in front, and you have * * * a block of ice in here, this truck raises up just like a dump car, and when it comes up these bolts here on the back * * * snap. That is the way this was done."

Jess Woolridge stated that he inspected the truck in question on the afternoon of May 16, 1946; that he "didn't find anything wrong with it."

R. G. Wassun, a mechanic, stated that the truck body was fastened down on the chassis with four U-bolts; that this is the usual way to tie a truck body onto a chassis.

Appellant was severely injured, sustained a fracture of his right femur or thigh bone and other injuries. When the bone did not unite, a metal plate was placed in his right femur. He was treated at the Nichols Hospital and the Marine Hospital. He did not return to work until December, 1947.

Dr. Roy Carter examined Wallace in May, 1947. He stated that Wallace at that time was a well-nourished colored man, a postman by occupation. He gave "a history of having his leg broken in May, 1946; his leg was stiff and it was a good deal shorter than the other leg."

In this state negligence may be alleged generally. Under such an allegation of negligence, the plaintiff may prove any act of negligence of the defendant. Where the petition contains a charge of general negligence coupled with specific acts of negligence, he is confined to **the specific acts.** Appellee concedes that if plaintiff's petition had charged general negligence, the doctrine of res ipsa loquitur would have been applicable in this case, but contends that under a plea of specific negligence, that doctrine is not applicable. That question does not seem to have been decided by this court.

Appellant concedes that he "is confined in his proof to the three specific acts of negligence alleged by him; that is, operating the vehicle at a dangerous and reckless rate of speed, failure to keep a lookout and, finally, operating a vehicle in a defective mechanical condition;" that "the real question in this case is thereby presented, and that is: Failing in proving any one of these three specific allegations of negligence, may the plaintiff nevertheless prevail, with the aid of the presumption of negligence afforded by the doctrine of res ipsa loquitur?"

In Shain's Res Ipsa Loquitur, page 20, the authority says:

"Chief Justice Erle's statement in the famous case of Scott v. The London and St. Katherine Docks Company has been universally accepted as an accurate definition of the doctrine from which the rule results. It will bear emphasis. This is the language:

" 'There must be reasonable evidence of negligence.

" 'But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.' "

In Schechter v. Hann, 305 Ky. 794, 205 S. W. 2d 690, 692, we said:

"The res ipsa loquitur doctrine, as stated in San

Juan Light & Transit Co. v. Requena, 224 U. S. 89, 32 S. Ct. 399, 401, 56 L. Ed. 680, is:

" '* * * when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care.' "

See 38 Am. Jur., pages 989 to 1009; 45 C. J., 'Negligence', sections 768 to 786.

Three separate rules have been adopted by courts of the various states on the question of whether or not pleading negligence specifically denies the pleader the benefit of the doctrine of res ipsa loquitur. A statement of the different positions taken by the courts is found in an annotation entitled "Pleading particular cause of injury as waiver of right to rely on res ipsa loquitur" in Angerman Co. v. Edgemon, 76 Utah 394, 290 P. 169, 79 A. L. R. pages 48 to 71.

Under the heading "View that pleading particular cause of injury does not waive right to rely on doctrine," page 48, it is said:

"Some cases go to the one extreme, and hold that, if the case is a proper one for the application of the doctrine, the plaintiff, by pleading the particular cause of the accident, in no wise loses his right to rely upon the doctrine, and any specific allegations of negligence in the complaint are wholly immaterial, provided, of course, the complaint otherwise sufficiently alleges the cause of action. Even if he fails to prove the specific allegations, the presumption is still available, and the burden is still upon the defendant to show absence of negligence upon his part."

At page 50, under the heading "View that right to rely on doctrine is waived by pleading particular cause of injury," it is said:

"Other cases go to the opposite extreme, and hold that a plaintiff, by merely alleging specific acts of negligence, precludes himself from relying upon the doc-

trine; at least the language used by the courts seems to admit of no other interpretation."

At page 55, under the heading "View that doctrine is applicable to prove particular cause of injury alleged," it is said:

"Another class of cases holds that, where a plaintiff makes specific allegations of negligence, he must rely for his recovery upon such specific acts of negligence, and cannot recover for any other negligent acts; but he is not deprived of the benefit of the doctrine of res ipsa loquitur to establish his specific acts of negligence. In other words, by the mere allegation of a specific act of negligence, he is not deprived of the benefit of the doctrine so far as the specific act of negligence itself is concerned. The application of the doctrine is limited to the establishment of the particular acts of negligence alleged, just as any proof which the plaintiff might seek to introduce would be limited to the establishment of the negligence alleged."

This we believe is the better rule.

This court has followed the rule that where a plaintiff undertakes to set out the negligence about which he complains in a specific fashion, he is confined in his proof to those specific acts. The doctrine of res ipsa loquitur should be limited to the establishment of the particular acts of negligence alleged, just as any proof which the plaintiff might seek to introduce should be limited to the establishment of the negligence alleged.

A body of a truck comes off the chassis, careens across the street and up on the sidewalk and injures a pedestrian. That is such an unusual happening that it would not have occurred had not the mechanism of the truck been defective. The thing speaks for itself. Under the rule we have adopted and the pleadings and proof adduced, the appellant was entitled to have his case submitted to the jury under proper instructions.

The judgment of the circuit court is reversed with directions to grant the appellant a new trial and for proceedings not inconsistent with this opinion.