ESTEPP v. NORFOLK & W. RY. CO.

No. 11302.

United States Court of Appeals
Sixth Circuit.

Nov. 30, 1951.

---

890

W. A. Daugherty, Pikeville, Ky. (W. A. Daugherty and P. B. Stratton, Pikeville, Ky., on the brief), for appellant.

William Baird, Pikeville, Ky. (W. W. Coxe, Roanoke, Va., Baird & Hays, Pikeville, Ky., on the brief), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment entered on an order for summary judgment issued by the District Court in favor of the defendant railroad company.

The parties will be designated as in the court below.

Plaintiff filed an action for wrongful death, alleging in substance that his decedent, a young boy, on June 22, 1949 was a paid passenger on defendant's train No.

16 proceeding eastwardly from Portsmouth, Ohio. The petition alleged that the defendant contracted to carry the boy, Larry Clifford Estepp, safely to his destination and that it failed to comply with the contract in this, that between Portsmouth, Ohio, and Delorme, West Virginia, and while the boy was a passenger on the train, about four miles west of Ironton, in Lawrence County, Ohio, "by and through the negligence of defendant, its agents, servants and employees," the child was killed, to the damage of the estate.

The court overruled a motion to dismiss the action, but sustained a motion to make more definite the statement of claim and ordered the plaintiff to amend his complaint "so as to set up the manner in which plaintiff's decedent met his death and to point out what the alleged act or acts of negligence on the part of the defendant consists of."

Plaintiff then filed an amended petition, which stated in substance that when train No. 16 arrived at Kenova, it was discovered that Larry Clifford Estepp was not aboard the train; that a search by defendant's servants and agents disclosed that he was not aboard the train; that some four or five days thereafter, at or near a point known as Dempsey's Crossing, in Lawrence County, Ohio, about four miles west of Ironton and approximately eighteen miles from Portsmouth, the crushed, bruised, mangled and decomposed body of the child was found near defendant's railroad tracks; that defendant's train No. 16 and all equipment and appliances pertaining thereto were exclusively controlled and managed by defendant and its agents, servants and employees at the time and place plaintiff's decedent was killed, and the circumstances of the killing of the decedent were such that, in the ordinary course of things it would not have happened if defendant, its agents, servants and employees in charge of the train had used proper care for the safety of the decedent; that the exact manner and cause of the death of the decedent are unknown to plaintiff; and that the death of the decedent was caused by the negligence of defendant and its agents, servants and employees in charge of and operating defendant's train.

Defendant filed an answer which for lack of information denies the appointment of plaintiff as administrator, and denies "all of the remaining allegations contained in said complaint and complaint as amended except to the extent that said allegations are expressly admitted by the following statement of facts," which defendant admits existed and occurred on June 22, 1949, and thereafter.

The answer states in substance that on June 22, 1949, plaintiff's decedent, who was eleven years, eleven months and eighteen days old at the time, boarded train No. 16 at Peebles, Ohio, in charge of Mrs. Flora Estepp and Mrs. Mae Phillips. Proper tickets for all three were bought from Peebles to Delorme, West Virginia, and they boarded the train at Peebles and transferred at Portsmouth, Ohio. When the train reached Pritchard Coaling Station in West Virginia, Mrs. Estepp and Mrs. Phillips discovered that the boy was missing from the train, and notified the conductor. The train was searched and the boy could not be found. Messages were then sent to Kenova and Ironton requesting the authorities to be on the lookout for him. Mrs. Estepp and Mrs. Phillips left the train at Williamson, West Virginia. On Saturday, June 25, 1949, a track walker, employee of the defendant, discovered the boy's body lying in the weeds on the south side of defendant's right of way near a culvert some thirty-three feet from the track, and approximately one and one-half miles west of Hanging Rock, Ohio, near what is known as Dempsey's Crossing. The answer states that defendant "has no knowledge or information as to how or under what circumstances plaintiff's decedent left the train or how or under what circumstances he met his death"; and also alleges that plaintiff's decedent was guilty of contributory negligence.

The court sustained defendant's motion for summary judgment, upon the ground that "there is not shown from the whole record in this case a genuine issue as to any material fact. Under the doctrine of

res ipsa loquitur, or rather the rule of law which is drawn from that doctrine, it is necessary that there be alleged some fact on which the negligence of the defendant can be inferred." The court stated "there is a complete absence of probative facts to support even a conjecture."

Plaintiff contends that the doctrine of res ipsa loquitur applies, and creates a presumption of negligence which bridges the gap in the testimony. This rule comes into force where the circumstances accompanying an injury warrant an inference of negligence on the part of the defendant. It applies to carriers of passengers when an injury is caused by some act of the defendant or by some instrumentality which at the time was under the control and management of the defendant, and the accident was such as would not happen in the ordinary course if the defendant had used proper care. In the absence of explanation by the defendant under such circumstances a presumption arises that the injury was caused by the defendant's negligence. 3 Shearman & Redfield on Negligence (Rev.Ed.), § 502, page 1264, and numerous cases cited.

The doctrine of res ipsa loquitur has been applied in airplane cases where the precise cause of the accident was neither alleged nor shown. In Johnson v. Eastern Air Lines, 2 Cir., 177 F.2d 713, the cause of the accident was not established. The Second Circuit affirmed the holding of the trial court that a case for the jury was presented. To the same effect, Bratt v. Western Air Lines, 10 Cir., 155 F.2d 850, 852, 854, 166 A.L.R. 1061.

In Smith v. Pennsylvania Central Air Lines Corp., D.C., 76 F.Supp. 940, 942, 6 A.L.R.2d 521, the complaint stated that plaintiff was "without knowledge as to the precise negligent acts or omissions causing the crash." The court held that the doctrine of res ipsa loquitur applied. Contra, Morrison v. Le Tourneau Co., 5 Cir., 138 F.2d 339. This case, however, did not involve a common carrier.

When an injury is caused by an accident in mid-air it would be difficult if not impossible to establish liability unless the

doctrine of res ipsa loquitur were applied. As aptly stated in Bratt v. Western Air Lines, supra 155 F.2d at page 853, in airplane cases "We have a fatal accident, the cause of which is seldom, if ever, susceptible of direct proof." However, it is also true that because of the intervention of weather conditions, icing, fog, etc., over which an airplane company has no control, there is perhaps more reason for applying the doctrine to railroads than to airplanes. Railroad operation is also affected by weather conditions, but not to the same extent as airplane operation.

We think the above cited holdings, which follow the general trend in airplane cases, support the conclusion that res ipsa loquitur applies here.

The application of the rule is governed by the law of the forum, which in this case is Kentucky. Restatement of the Law of Conflict of Laws, § 595.

Since the petition alleged no specific act of negligence, the defendant contends and the District Court held that no genuine issue was presented as to any material fact. But the petition alleged that the train was in the exclusive control of the defendant and its agents; and that the accident was caused by the negligence of the defendant. To hold that this allegation does not raise an issue of fact is to ignore the Kentucky decisions which in this case are controlling. It is the law of Kentucky that a general allegation of negligence is sufficient. Under such an allegation of negligence the plaintiff may prove any act of negligence of the defendant. Wallace v. Norris, 310 Ky. 424, 428, 220 S.W.2d 967. In Davis' Adm'r v. Ohio Valley Banking & Trust Co., 127 Ky. 800, 106 S.W. 843, 844, 15 L.R.A.,N.S., 402, the petition alleged that the decedent was killed by the negligence of the defendant and its employees while conducting and managing a passenger elevator. A demurrer to the original petition was sustained. The Court of Appeals of Kentucky, in reversing the decision of the trial court, held that the petition was sufficient. It stated: "It has been declared time and again by this court that in an action for personal injuries it is sufficient to

charge in a general way that the injury or death for which the recovery is sought was caused by the negligence of the defendant. The plaintiff is not required to state the circumstances or details under which the infliction of the injury was accomplished, in order to show that it had been occasioned by negligence, or to state facts showing that he was not guilty of negligence, thus anticipating the defense."

 It also is the law in Kentucky that when the doctrine of res ipsa loquitur is relied upon the burden of proving the ultimate issue does not shift but the burden of going forward shifts and the defendant is required to "pick up the burden." Dunning v. Kentucky Utilities Co., 270 Ky. 44, 48, 109 S.W.2d 6, 9. In the instant case the defendant has made no explanation by answer, by affidavit, or by evidence. The train was under the exclusive control of the defendant. Nothing is shown as to the method of operating the train, as to its physical make-up, nor as to any circumstances which might shed light upon the accident. From this record it does not appear "what the truth is" and "that no genuine issue remains for trial". Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967. This being the case, rule 56 of the Federal Rules of Civil Procedure 28 U.S.C.A. does not authorize a summary judgment in favor of the defendant. As stated in the Sartor case, the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try. At the trial of the case it may appear that a directed verdict for the defendant is required, cf. Dunning v. Kentucky Utilities Co., supra, or that the case should be submitted to the jury, as in Lewis v. Wolk, 312 Ky. 536, 228 S.W.2d 432, 16 A.L.R.2d 974. However, as held by this court in Begnaud v. White, 6 Cir., 170 F.2d 323, 326, the trial judge should be slow in granting a motion for summary judgment depriving a party of his right to trial by jury where there is a reasonable indication that a material fact is in dispute.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.