**JOANN COAL COMPANY et al.,**
**Appellants,**

**v.**

**Howard E. TOMLINSON,**
**Appellee.**

Court of Appeals of Kentucky.

Sept. 14, 1973.

F. Preston Farmer, Hamm, Taylor, Milby & Farmer, London, for appellants.

Lester H. Burns, Jr., Burns, Maricle & Mitchell, Manchester, for appellee.

CASS R. WALDEN, Special Commissioner.

Appellee, plaintiff below, brought this action against appellants, defendants below, to recover of them damages for bodily injuries, pain and suffering and special damages incident thereto, alleged to have occurred by reason of appellants' negligence. The case was tried with a jury and resulted in a verdict for appellee in the sum of $10,000 on which a judgment was entered, and appellants appeal therefrom.

Appellants are partners doing business as the Joann Coal Company. Appellee is a welder. On September 18, 1968, appellants called appellee to their place of business to do some welding on the machinery. The place where appellee was to work was about sixteen feet from the ground. Appellee was raised or taken to the place of work in the bucket of a highlift. Mr. Corum, an experienced operator, one of the partners, operated the highlift. Appellee had been lifted to the job and did some work. It became necessary for appellee to be lowered to the ground to get a particular kind of welding material. Mr. Corum lowered him to the ground in the bucket of the highlift. In the process, appellee's left patella, or kneecap, was broken. Appellee described the accident in the following manner:

"Q. 29 Tell the jury when you started down, could you tell how the bucket came down?

A. It was sudden, fell all of a sudden and fell within about a foot of the ground and that was when my knee was broken.

Q 30 A sudden drop and the bucket stopped?

A. Yes, I would say dropped about ten or twelve feet.

Q 31 What happened to you when the bucket came to a sudden stop after that big drop?

A. I lost track of time. I guess I must have laid down in the bucket. They said I disappeared, it kind of hurt kind of bad and he let it on down slowly and I climbed out.

Appellant Corum's account of what happened is as follows:

Q 2 Mr. Corum in your own words tell the jury and the court on September 18, 1968, when Mr. Tomlinson came to Joann Coal Company to do some welding what happened?

A He come up there to do some welding and he we had some teeth broke out of gear up on top of hoist that raised the trucks up to dump them. It must have been about 16 feet up where this was setting on frame work post and I didn't see anyway for Pat his age to go up there without taking him up in that and put him up in that and put him up there and the roof is pretty low on it and he has to set down to weld. He couldn't stand up he had to set down. He had been welding a little bit and he said he needed some bigger rods to weld with and I told him I would get them and I went to the truck to get them. He was welding with I believe a small ⅛ inch rod. I went to get ⁵⁄₁₆ rod I don't know how many teeth broke they said four and I pulled one of the rods out of little tube there and it was ⁵⁄₁₆ and I took it back there and put in bucket and handed it back up to him and he came and got it out and pulled one of the rods and they were all ⅛ inch rods and he said just let me down and I started letting him down. It was my opinion that the high-lift was traveling too fast, they have talked about it falling, there was no falling to it. I thought it was traveling too fast and I slowed it up and it rocked the bucket and staggered Mr. Tomlinson and I still didn't know he was hurt and I let him on down. and I went slow and he said I have hurt my leg and I think I have broken it and I said I reckon not and he said must have hit it on the bucket and I said I will send you to the doctor and he said I will finish it and I wouldn't let him. Pat is a good welder; welded for me before and after and I got an ambulance and sent him to the doctor . . . ."

Appellants' only argument is that appellee was negligent as a matter of law in voluntarily getting in the bucket to be hoisted to the place where he was to work. We do not agree. There is no evidence that there was any unusual danger involved in being hoisted up and down in a bucket to perform work such as appellee was doing. The evidence indicates that appellee, both prior to and subsequent to his injury, had gone through the same procedure and the use of the highlift was the practical method, if not the only way, to get to the place to work. Certainly it cannot be said, based on the evidence in this case, that appellee's voluntary use of the highlift bucket to get to his work was so unreasonable as to constitute contributory negligence as a matter of law. Cf. Barnett v. Hendrix, Ky., 442 S.W.2d 312 (1969).

Appellants rely primarily on the case of Carter v. Snyder, Ky., 329 S.W.2d 382 (1959). The facts in Carter are easily distinguishable from the facts here. Standing on the top of a bulldozer blade with muddy shoes on, when the blade is moved up and down, is quite different from riding up and down in a bucket on a highlift. Bulldozer blades are not made for people to stand on when in movement.

■ Mr. Corum, as the operator of the highlift, owed the appellee the duty to exercise ordinary care in the operation of the machine and the court so instructed the jury. The evidence clearly presented a factual issue as to whether appellee's injury was the result of appellants' failure to exercise ordinary care. On this issue of fact, the jury decided in appellee's favor. Thus, we hold that the court did not err in overruling defendant's motion for a directed verdict and the motion for a judgment n.o.v.

The judgment is affirmed.

All concur.