Wanda A. CLEMENTS, Administratrix of the Estate of Alan T. Clements, Deceased; Marathon Oil Company; and Hartford Accident and Indemnity Company, Movants,

v.

ASHLAND OIL, INC., Respondent.

and

ASHLAND OIL, INC., Movant,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Respondents.

Supreme Court of Kentucky.

June 15, 1983.

Rehearing Denied Oct. 12, 1983.

Leslie W. Morris, II, Lyle G. Robey, Stoll, Keenon & Park, Lexington, for respondent in No. 82–SC–187–DG and for movant in No. 82–SC–433–DG Greenebaum, Doll & McDonald, Lexington, of counsel.

John R. Wilson, Wallace, Gordinier, Wilson, Ruck & Cooper, Louisville, David T. Enlow, Enlow, Murphy, King & Dunn, Lexington, James S. Carroll, Harrodsburg, James T. Gilbert, Richmond, John M. Lawrence, Bardstown, W.R. Patterson, Jr., Landrum, Patterson & Dickey, Lexington, Guy K. Duerson, Jr., Duerson & Duerson, Berea, James D. Ishmael, Jr., Brown, Sledd & McCann, Lexington, Guy R. Colson, Fowler, Measle & Bell, Lexington, for movants in No. 82–SC–187–DG and for respondents in No. 82–SC–433–DG.

JAMES M. COLLIER, Special Justice.

The location of this tragic accident was the Ashland Oil bulk plant in Lexington. The relevant part of the Ashland facility was a loading dock. The dock included a roof under which tanker trucks could pull on either side of a platform for loading. Underneath the roof were drop tubes, each of which dispensed a different kind of petroleum product to waiting tankers. The flow of the liquid was controlled by a "meter" beside each tube.

About noon on October 10, 1973, three tankers were in the precincts of that loading dock. Each tanker consisted of a tractor and a tank trailer. The first of these, driven by Tobe Collins, was filling on the east side of the docks. Directly behind Collins, and waiting his turn to load, was another rig driven by Rovie D. Himes. The tractors to these rigs belonged to Sanders Trucking, Inc.; the trailers to Lewis Transport, Inc. On the west side an employee of Marathon Oil Company, Alan T. Clements, had positioned his tanker for loading.

What happened at the dock is the subject of some variances as related by eye witnesses. Enough evidence is uncontradicted, however, to dispose of the case. Collins had finished loading gasoline, and had turned that drop tube over to Clements. Collins was in the process of loading diesel. Clements placed the gasoline drop tube into his tank, started the meter, then walked toward the rear of the platform. The tube catapulted out of the tanker, spraying gasoline over Clements, the trucks, and the platform. Fire erupted, engulfing the dock and all three trucks. The dock was destroyed along with the three tractors and two of the trailers. Most tragic of all, Himes and Clements were killed by the flames. Collins miraculously escaped.

A round of litigation ensued. Everybody claimed everything against everybody else. All claims were consolidated and tried together. One trial occurred in 1977. It ended in a hung jury. A second trial was conducted in 1979, which ended in awards against Ashland as follows:

| | | |
|---|---|---|
| 1. | To the Estate of Clements | $74,649.90 |
| 2. | To Hartford Accident and Indemnity Company (for various payments in the Clements estate) | 27,420.00 |
| 3. | To the Estate of Himes | 175,007.09 |
| 4. | To Commercial Union Insurance Company (for various payments made to the Himes estate) | 27,375.08 |
| 5. | To Sanders Trucking, Inc. | 17,863.40 |
| 6. | To Lewis Transport, Inc. | 7,901.56 |

Ashland appealed. The Court of Appeals reversed the awards to the Clements estate and to Hartford, but affirmed the other. Both Ashland and the Clements-Hartford faction moved this Court for discretionary review, which was granted. We affirm the reversal of the Court of Appeals of the judgment in favor of the Clements-Hartford faction, but reverse its affirmation of the other judgments against Ashland.

This protracted trial elicited much testimony from experts as to why this accident happened. All counted as significant certain undisputed facts. Nobody associated with Ashland was around when the holocaust broke. Clements was the person who had assumed command of the gasoline load-

ing equipment. He was an experienced hand, who had had extensive training in the safe use of the facilities. He was supposed to place the drop tube deep into the tank then secure it to the tank with a chain attached to the tube. The specific purpose of this precaution was to keep the force of the surging liquid from erupting the tube from the tank, spraying gasoline about.

An added precaution dictated that Clements stand by the meter during filling so he could shut off the flow of gasoline in the event of emergencies. All experts agreed securing the tube and standing by the meter were essential safety precautions.

■ Whether Clements followed the first of these precautions, securing the tube, is unknown from the evidence. The testimony is undisputed that he did not stand by the meter. We agree with the Court of Appeals that the acts of Clements on this occasion were negligent as a matter of law.

■ We now address the question of whether there was any negligence on the part of Ashland. Two criticisms were aimed at Ashland. The first was the condition of the facility; the second was a lack of enforcement of the stand-by-the-meter rule. On the facility, two experts on behalf of claimants testified there was safer equipment. One did not like the static electric drain-off system Ashland supplied. He did not condemn the one used as below the standard of care, he merely felt there might have been a better one. The other expert felt the same way about the chain mechanism used to secure the tube. He advocated some sort of harness contraption in place of the chain. This expert acknowledged he had, without complaint from himself, worked at a loading dock for another oil company for years which had used the chain device. Most important of all, he admitted that if Clements had fastened the chain as he should, then the tube would not have come out of the tank. Neither expert for claimants testified to facts that put the equipment furnished by Ashland below the applicable standard of care. One is not required to use the "safest" equipment, so long as what is furnished is "safe". *Jones*

*v. Hutchinson Manufacturing, Inc.,* Ky., 502 S.W.2d 66 (1973).

■ The question of standing by the meter could bring the house down on every claimant. If it was negligent not to stay by the meter, then all three drivers present were negligent, as well as Ashland. All the drivers there, Clements, Collins, and Himes, knew the necessity of following safety precautions, were knowledgeable of existing conditions, including the tendency of drivers to wander from the meter, and were experienced in loading gasoline. If Ashland were negligent in its control and maintenance of the dock, then not only Clements but also Collins and Himes would be contributorily negligent, so all claimants would be entitled to a directed verdict on all claims against them, and nobody would collect anything. Under the evidence, such a harsh result is not necessary. The only one negligent for not staying by the meter was Clements. Therefore, neither Himes nor Collins, nor their employer, nor Ashland was negligent when Clements chose to wander. From the uncontradicted evidence it is obvious Clements was in control of the series of events which led to this catastrophe. Such catastrophies do not happen unless someone is negligent. Therefore, there was a presumption Clements was negligent. *Wallace v. Norris,* 310 Ky. 424, 220 S.W.2d 967 (1949). This presumption was never overcome. The jury found Clements negligent. That negligence as a matter of law was the direct cause of the damages suffered by all. Therefore, the trial court should have instructed the jury to find for Ashland as well as for the Estate of Himes, Commercial Union, Sanders Trucking, and Lewis Transport on their claims against the Clements estate and Marathon.

This case is remanded to the trial court to:

1. Enter a judgment N.O.V. for Ashland;

2. Enter a judgment on behalf of the Himes Estate, Commercial Union, Sanders Trucking, and Lewis Transport for the amounts awarded them by the jury

against the Clements Estate and Marathon;

3. Retry the claim of Ashland against the Clements Estate and Marathon only on the question of how much damages should be awarded Ashland.

STEPHENS, C.J., AKER, LEIBSON, STEPHENSON and WINTERSHEIMER, JJ., and JAMES M. COLLIER and RICHARD L. FRYMIRE, Special Justices, sitting.

All concur except LEIBSON, J., who dissents and files herewith a separate dissenting opinion.

LEIBSON, Justice.

This is but another instance of taking hammer and chisel to chip away at the cornerstone in the House of Justice, trial by jury.

A properly instructed jury found that Ashland was negligent and the cause of this tragic accident. We have substituted our findings of fact for those of the jury.

The cases are legion that in negligence cases such as this one the verdict of the jury resolves any conflicts in the testimony and also any conflicts in the reasonable inferences to be drawn from the testimony in favor of the prevailing party, who was Clements. To name but a few: *Murphy v. Homans*, 286 Ky. 191, 150 S.W.2d 14 (1941); *Mahan v. Able*, Ky., 251 S.W.2d 994 (1952); *Current v. Columbia Gas of Ky., Inc.*, Ky., 383 S.W.2d 139 (1964).

Even though more than one theory is consistent with the evidence, if there is evidence from which to infer one is more probably correct, a jury may so conclude. *Penn Central Transportation Co. v. Skaggs*, Ky., 489 S.W.2d 26 (1972).

In *Ohio Cas. Ins. Co. v. Commonwealth, Dept. of Hwys.*, Ky., 479 S.W.2d 603 (1972), we wrote at p. 605:

"The appellant suggests that since the 'facts' are not in dispute the *question* of proximate cause is one of law. That is not correct, because the mere fact that the *circumstances* are not in dispute does not preclude the existence of an issue of fact, as with respect to *inferences* to be drawn, . . . .

"If reasonable minds could differ as to whether the injury was a natural and probable consequences of the negligent act, the question is for the jury. (Citation omitted) Differing human experiences may produce different conclusions as to what is natural or what is probable."

*Ohio Cas. Ins. Co., supra,* acknowledges that the rule of longstanding in this Commonwealth has been that both negligence and proximate cause are issues for a jury unless the court is "prepared to say that human experience has demonstrated beyond question" that only one verdict would be correct. A number of recent cases pay lip service to this axiom, but direct a verdict nevertheless. This is one of them.

Although judges may be trained in the law, I have yet to see any evidence that they are better qualified to decide a factual question than the jury who heard the evidence and saw the witnesses. Their "differing human experiences may produce different conclusions," *Ohio Cas. Ins. Co., supra,* but this is hardly grounds to substitute their opinion for that of the jurors.

The jury found Ashland liable for failing "to provide and maintain a method for holding down the loading spout mentioned in the evidence during the loading of gasoline that was reasonably safe for its intended purpose when used by a person exercising ordinary care for his own safety." There was ample evidence concerning the equipment and the procedures that Ashland used to support this conclusion. In addition there was expert testimony creating such an inference. The Court of Appeals affirmed the finding of negligence as to Ashland, but we have reversed.

Both the Court of Appeals and this Court have reversed the jury's findings as to Clements. The jury found that Clements' actions were *not* a "substantial factor in causing the occurrence." The Court of Appeals and this Court take the view that Clements' failure to observe the "stay by

the meter" when loading rule was contributory negligence as a matter of law. There was evidence that this rule was generally disregarded by both Ashland and its customers. In the instructions on Clements' duties, the only specific duty listed was not to use Ashland's method for holding down the loading spout if he knew or should have known that such method was not reasonably safe. This is not the type of negligence which would necessarily be considered causative.

In my view the negligence case justifying a directed verdict is a *rare* one. If the only question is who ran the red light, and the evidence is uncontradicted, such a result may be justified. Ordinarily, deciding whether the manner in which a workman performs on a construction site or in an industrial situation constitutes contributory negligence is an issue of fact for the jury. *Joann Coal Co. v. Tomlinson,* Ky., 499 S.W.2d 275 (1973). A worker is not negligent as a matter of law in assuming risks that go with his employment absent proof of a danger so unusual and so great that no reasonable person would assume it. *Joann Coal Co., supra.* The circumstances surrounding the occurrence of this tragedy were complex factual questions that are properly addressed to the deliberations of a jury.

*Fields v. Western Ky. Gas Co.,* Ky., 478 S.W.2d 20 (1972) should be controlling in this case. In *Fields* the plaintiff was an employee of a firm engaged in laying sewer pipe. While working underground he struck a match to light a cigarette and was badly burned in the explosion that followed. He sued the gas company, alleging· that negligence in maintaining nearby gas lines resulted in a leak of natural gas into the sewer lines. The trial judge directed a verdict for the defendant and this Court reversed.

In *Fields,* the defendant's evidence was that the cause of the explosion, as likely as not, was "sewer gas or fumes from a solvent used in the repair of the sewer lines" rather than natural gas as the plaintiff contended.

We stated at p. 22:

"(I)t is neither legal 'speculation' nor 'conjecture' when a jury finds as a fact that an event happened by reason of a particular cause when the evidence on behalf of a party, if believed, is sufficient to show that it is more likely than not that the event occurred as a result of the cause so found. `(Citation omitted) ...

"(T)he expressed reasoning of the trial judge that because of the existence of other possibilities, the defendant was entitled to a directed verdict is erroneous."

As in the present case, the plaintiff's expert supported the plaintiff's theory as to the cause of the explosion, although contradicted by the defendant's expert. We stated at p. 22:

"It is not the function of the Court to decide how much weight should be given his testimony. That responsibility is the province of the jury."

In *Fields* the defendant contended the plaintiff was guilty of contributory negligence as a matter of law because he struck a match in the presence of gasses collected in the sewer. The situation was very similar to the present case. The defendant contended that the employees had been "warned not to smoke because of the probable presence of sewer gas and (plaintiff) violated these warnings." The plaintiff contended that "employees engaged in the project smoked regularly without incidents and without any prohibition of such conduct." The Court stated the question of contributory negligence was "one for the jury."

In *Fields* this Court respected the function of a jury as the trier of fact in a negligence case such as the present one. We should do likewise here. In these cases the legal issues are simple, but the fact situation is complicated.

There is a distressing trend illustrated by *Manchester Ins. & Indem. Co. v. Grundy,* Ky., 531 S.W.2d 493 (1975), to consider disputed factual questions too complicated for

a jury. In *Manchester,* in discussing tests of "negligence" and "bad faith" in failing to settle an insurance claim within the policy limits, this Court stated at p. 500:

"A group of laymen, casually assembled, is absolutely incompetent to apply either test accurately."

I do not agree with this view of jurors or of jury trials. But assuming that the particular expertise that addresses itself to when to settle insurance claims is more likely to be found in judges rather than in jurors, no such claim can be made where the question is what conduct is reasonable and appropriate for the people involved in the operation of an oil company's loading dock. We should not withdraw from the constitutional mandate that "the ancient mode of trial by jury shall be held sacred" and "remain inviolate." Ky. Const., § 7. This quote from Justice J.P. Hobson in a case long ago with similar issues of negligence and contributory negligence is more true today than it ever was:

"The constitution guaranties a jury trial in this class of cases. The reason of the rule is that the common judgment of 12 men of the average of the community, with their varied experiences, is more to be trusted, on such questions of fact, than the conclusion of a single judge, however learned." *Chesapeake & O. Ry. Co. v. Davis,* 119 Ky. 641, 60 S.W. 14 (1900).

In the circumstances of this case the jury could well believe that Ashland caused this occurrence by the manner in which it conducted its operation on the loading dock and/or the equipment Ashland furnished to the working men it invited onto the dock to load its product. The judgment should be affirmed.