**BRATT et al. v. WESTERN AIR LINES, Inc.**

**No. 3221.**

Circuit Court of Appeals, Tenth Circuit.

May 20, 1946.

Rehearing Denied July 15, 1946.

William H. DeParcq, of Minneapolis, Minn. (Parnell Black and Brigham E. Roberts, both of Salt Lake City, Utah, and Robt. J. McDonald and Donald T. Barbeau, both of Minneapolis, Minn., on the brief), for appellants.

Forrest A. Betts, of Los Angeles, Cal., and Arthur E. Moreton, of Salt Lake City, Utah, for appellee.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Hilda Ogden Bratt and her two minor children brought this action against the Western Airlines Corporation to recover damages for the death of their husband and father, Jack Raymond Bratt, who was killed while riding as a passenger in a plane owned and operated by Western Airlines. The complaint alleged "exclusive control and management" of the plane by the Airline Company, and the negligent and careless operation and maintenance of it as the proximate cause of deceased's death. Denying negligence, the Company alleged the dangers and perils necessarily incident to air travel, and averred that insofar as such risks and hazards are beyond control of human action and could

not be compensated for by exercise of the highest degree of care, they were assumed by the deceased at the time he purchased transportation on the airline. The case was submitted to the jury on the doctrine of res ipsa loquitur. A verdict was returned in favor of the Airline Company.[1] The errors assigned on appeal involve the admissibility of evidence, and the conduct of court and counsel in depriving appellants of a fair and impartial trial.

The evidence established the following undisputed facts: Flight No. 1 of the Western Airlines left the Salt Lake City Airport at about 1:05 a. m. on December 15, 1942, on its regularly scheduled flight from Salt Lake City to Los Angeles. At about 1:22 a. m., approximately three miles southeast of Fairfield, Utah, the plane crashed, killing the entire crew and thirteen passengers. The flight crew were all highly trained and qualified, and all testimony was to the effect that the air was smooth and weather conditions were favorable for the flight. It seems to be agreed that the accident was caused by a structural failure in flight. The appellee, however, specifically denies, and offered evidence to the effect that the accident was not caused by any mechanical or structural defect of the plane, or any other cause within its control.

In an attempt to show that a defective and unsafe right horizontal stabilizer of the plane was the proximate cause of the fatal accident, the appellants offered the evidence of Roland Marvin Lee, an aviation mechanic. After extensive examination and cross examination in qualifying the witness as an expert, the following question was asked by counsel for appellants: "Now taking into consideration your own knowledge and experience and the evidence that I have mentioned— the weather records, the photographs, barograph card—and assuming the testimony of Lt. Gardner [sole survivor of the crash] to be true, I will ask you whether or not you were able to form or express an opinion with a reasonable decree of certainty as to whether the right horizontal stabilizer and the elevator with it was the first part of the first section of this plane to fail in flight?" The Court sustained an objection to the question on the grounds that the witness was not qualified to render such an opinion, and it is this ruling which the appellant contends was erroneous.

The question called for an expert opinion in the field of aerodynamics, and the examination of the witness Lee developed the following touching his qualifications as an expert on that subject. He became interested in aviation in 1927 and since that time has owned three planes of his own; he has flown numerous types of planes, including multi-engine and twin-engine aircraft, and has approximately eleven hundred air hours to his credit. The only time he has flown a DC-3 (the type here involved) was after it was taken into the air by a qualified pilot who let him then take the controls. He has never had a commercial pilot's license, but has held a private license and now holds a student's license. In 1943 he worked eleven months for Western Airlines as an "apprentice mechanic" and is now employed as an aviation mechanic by the Thompson Flying Service. His work with Western Airlines required a general knowledge of aircraft and as a part of his duties he did general maintenance work, including inspection and repairs. He has not been certified by Federal authorities and therefore never signed any Civil Aeronautics Authority forms as an official inspector, but made them out under the supervision of a licensed "A & E". He has studied the "C. A. A." manuals and Western Airline maintenance manuals and read other literature pertaining to the operation, maintenance and construction of DC-3 equipment. He has studied aerodynamics through study courses and classroom work, having attended a class at least once a week for over two years, in addition to manuals and books published for the "C. A. B." He stated that he had studied "load factors and structural aerodynamics"; that he knew metals and had experi-

1 Two other actions were also brought for wrongful death arising out of the same accident. They were submitted to the jury on the same facts, except the measure of damages, and a verdict for the Airline Company was returned in each case. The cases are here on one record presenting common questions.

mented with heat alloy. He also examined the wreckage of the plane at the point of the accident. Over objections of counsel, the court permitted him to describe the purpose of ailerons, stabilizers and rudders, and to discuss the various parts and structures of an airplane with reference to their purpose and function in flight. In short, the court permitted him to testify concerning all the issues in the case except to express an expert opinion as to the cause of the accident.

"A witness is an expert witness and is qualified to give expert testimony if the judge finds that to perceive, know or understand the matter concerning which the witness is to testify, requires special knowledge, skill, experience or training and that the witness has the requisite special knowledge, skill, experience or training". Restatement Model Code of Evidence, § 402. "Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible, is a preliminary question for the judge presiding at the trial, and his decision of it is conclusive, unless clearly shown to be erroneous as a matter of law." Stillwell Manufacturing Co. v. Phelps, 130 U.S. 520, 9 S.Ct. 601, 603, 32 L.Ed. 1035; see also Montana R. Co. v. Warren, 137 U.S. 348, 11 S.Ct. 96, 34 L.Ed. 681; Spiller v. Atchison T. &. S. Ry. Co., 253 U.S. 117, 40 S.Ct. 466, 64 L. Ed. 810; Love v. United States, 8 Cir., 141 F.2d 981; Clarke v. Hot Springs Electric Light & Power Co., 10 Cir., 55 F.2d 612, 615; Foster v. United States, 8 Cir., 145 F.2d 873, 877; Graham v. Ogden Union Ry. & Depot Co., 79 Utah 1, 6 P.2d 465, 467. We have recently said that "the qualification of the witnesses to testify as experts and the weight to be given to their testimony were matters peculiarly for the trial court." Korth v. Zion's Savings Bank & Trust Company, 10 Cir., 148 F.2d 170, 171, 172. Wigmore maintains that the trial court should be left to determine "absolutely and without review" the qualifications of a particular witness. Wigmore on Evidence, 2d Ed., vol. 1, § 561.

While it is not our province to review the discretion of the trial court, if exercised within legal bounds, it is our right and duty we think, to determine whether in the exercise of the discretion committed to it, the trial court applied the correct legal standards.

The trial court's refusal to permit the witness to state his opinion concerning the cause of the accident, or concerning which part of the plane, in his opinion, structurally failed first, is apparently based on the impression that the witness must have either experienced an accident of this kind, or be an "expert who had figured it out mathematically and had taken into consideration every factor" that goes to the use of the various parts of an airplane.

If we leave the answer to those who have experienced an accident of this kind we would seldom find a solution, because as we all know, few ever survive to relate their experience. We have a fatal accident, the cause of which is seldom, if ever, susceptible of direct proof. The answer to our question therefore necessarily lies within the realm of scientific speculation, and can be answered by those who are specially qualified by experience, training and skill in matters relating to airplanes, their parts, purposes and functions. If actual experience cannot be the test in cases of this kind, when then does a witness become qualified to testify from special experience concerning the scientific cause of an accident not susceptible of direct proof. There is no precise requirement as to the mode in which requisite skill or experience shall have been acquired. "A witness may be competent to testify as an expert although his knowledge was acquired through the medium of practical experience rather than scientific study and research". Am.Jur., Evidence, vol. 20, § 784.

The witness had no scholastic standing in the science of aerodynamics, but he was a man of practical experience who said he had made an actual study of the structural stress and strain of the parts of an airplane, and that based upon his examination of the wreckage at the point of the accident and other facts available to him, he had an opinion concerning which of the parts of the plane struc-

turally failed first in flight, and was therefore the proximate cause of the accident. It may be that his testimony was of little value when judged by the substance of direct testimony, or when compared with the testimony of those whose opinions are steeped in the lore of scientific research. But, "the law does not require the best possible kind of a witness". Wigmore on Evidence, 2d Ed., vol. 1, § 569; Fightmaster v. Mode, 31 Ohio App. 273, 167 N.E. 407. The testimony. of a country doctor concerning the sanity of his patient is as readily admissible as the testimony of the most renowned psychiatrist.

 It must be remembered that the court is not the judge of the quality of the evidence, nor does the witness perform the function of a juror—he can only contribute something to the jury's information and if he can, he should be permitted to do so. Especially is this true, where as here the answer to the crucial question is necessarily left to those claiming special knowledge based upon experience. If we close the door to testimony of this quality, in cases of this kind, we are brought to a point in the law of torts, as applied to aviation, where it would be impossible to prove a case except by the testimony of someone who actually experienced an accident of this kind, or who can base his opinion upon a scholastic background. We do not understand that such is, or should be, the policy of the law, and although we are most reluctant to disturb the ruling of the learned trial court, we are of the opinion that in determining the qualifications of the witness as an expert, it applied the wrong legal standards.

The appellants also complain of the court's exclusion of the testimony of one Welcher, a farmer living about five miles from the scene of the accident. He testified preliminarily that during the ten years he had lived at this place, he was in the habit of listening to the sounds of the motors of airplanes which passed over his home daily, and sometimes many times during the day; that on the evening of the accident in question, and at about the time it occurred, his attention was attracted by the sound of airplane motors passing over his home. The appellants offered to prove by this witness that at about the time this airplane would in the normal course of its flight pass over his home, he heard a noise of engines that was different from the usual and ordinary noise he had heard daily over a period of years. That in this particular instance the "motors would come and go off and the noise would come and go".

The court sustained an objection to this testimony on the grounds that there was no showing that the motors the witness heard were those of the plane in question, and for the further reason that in the absence of a showing of the weather conditions and other factors entering into one's hearing on the ground five thousand feet below the plane, his lay opinion concerning the sound of the motors was a mere "guess" of what was happening to the plane in the air.

 Counsel for appellant emphasized that the testimony of this witness was not offered as expert evidence as to the cause of the accident, but merely as a circumstance to aid the jury in determining the ultimate question peculiarly within its province. The trial court, however, apparently considered the proffer in the nature of expert testimony. All that was expected of the witness was a conclusion on a matter, knowledge of which could be gained by the ordinary experience of any layman. To state whether or not the witness detected anything abnormal about the sound of the airplane motors would not call for special training and experience in the science and mechanics of airplane motors. The questions did not go that far —it was merely offered for whatever aid it might be to the jury. The extent of the witness' knowledge of the matters about which he offered to testify, effected only the weight of his testimony, not its admissibility. See Wigmore on Evidence, 2d Ed., vol. 1, §§ 556–559. We think the witness should have been permitted to testify in this limited capacity.

Since in our view the case must be remanded for a new trial, we deem it appropriate to remind counsel that sarcastic witticisms designed to provoke ridiculous

impressions have no place in the orderly conduct of a trial in Federal court and should not be tolerated. It is enough to say that the conduct of counsel did not, in our judgment, comport with the ideals of professional decorum. We indulge in the expectation that the case will be retried in an atmosphere more conducive to the administration of justice.

The case is reversed and remanded with directions to proceed in accordance with the views herein expressed.