374 F.2d 672
 155 U.S.P.Q. 611
 STOODY COMPANY, a foreign corporation, Appellant,
v.
Clady ROYER, Blanton W. Hoover, and James T. Hoover, d/b/a
Track Service Company, Appellees.
Clady ROYER, Blanton W. Hoover and James T. Hoover, d/b/a
Track Service Company, Appellants,
v.
STOODY COMPANY, a foreign corporation, Appellee.
 Nos. 8471, 8472.
 United States Court of Appeals Tenth Circuit.
 Jan. 4, 1967.
 
 Frank B. Yoakum, Jr., Trippet, Yoakum & Ballantyne, Los Angeles, Cal., and Gordon F. Rainey, Rainey, Flynn, Welch, Wallace, Ross & Cooper, Oklahoma City, Okl., for appellant and cross-appellee.
 Ben Franklin and Harvey L. Harmon, Franklin, Harmon & Satterfield, Oklahoma City, Okl., for appellees and cross-appellants.
 Before PHILLIPS and HICKEY, Circuit Judges, and DOYLE, District Judge.
 HICKEY, Circuit Judge.
 
 
 1
 On November 23, 1959, appellees[1] Royer, citizens of Oklahoma, brought an action against appellant[2] Stoody in the United States District Court for the Western District of Oklahoma.
 
 
 2
 Royer asked judgment, seeking $2,238,955.21 actual or compensatory damages, $750,000.00 punitive or exemplary damages, together with costs, for defaming his product. Stoody moved to dismiss on the ground that it was not 'doing business' in the State of Oklahoma, and therefore, not properly subject to service under the Oklahoma 'long-arm statute.' In addition to the motion to dismiss, Stoody filed an answer which denied liability. The matter was tried to the court without a jury.
 
 
 3
 The trial court divided the issues in the case and proceeded to trial on the questions of liability and doing business in the state. The court gave judgment to Royer on both issues.
 
 
 4
 Subsequent to the judgment determining liability, the issue of compensatory damages was set for hearing before the court. Royer requested the appointment of a special master to hear the evidence of compensatory damage. A showing of exceptional conditions evoked the court to make the appointment.
 
 
 5
 A comprehensive transcript of evidence was adduced upon which the master made his report to the court assessing Stoody liable for $108,611.58 compensatory damage. Both Royer and Stoody objected to the report, but the court adopted the findings of fact and conclusions of law of the master and assessed an additional $25,000.00 punitive damages and a fee of $4.700.00 for the master. Both parties were dissatisfied.
 
 
 6
 Stoody filed an appeal objecting to jurisdiction, liability, admission of evidence and assessment of damages.
 
 
 7
 Royer cross appealed complaining that the master failed to consider the total pecuniary loss he suffered because of Stoody's defamation.
 
 
 8
 In order to treat the specific objections with effectiveness, the opinion will be broken down to recite the facts applicable to the specific objection.
 
 
 9
 1. JURISDICTION.
 
 
 10
 A motion to quash the service of summons and dismiss the action was filed by Stoody. The court denied the motion after it heard evidence on the issue during the liability hearing.
 
 
 11
 Stoody contends that the Oklahoma long-arm statute, 18 Oklahoma Statute Annotated 1.204a,[3] did not reach them because they had not been doing business in the state.
 
 
 12
 The court found Stoody was engaged in doing business within the state at all times material to the action. The findings were specific regarding five separate contacts made in Oklahoma City by Stoody relative to the 'Flange Master.' Additional examples of direct sales, volume of Stoody business in Oklahoma, machine servicing and business solicitation in the state are set out in the findings.
 
 
 13
 'The Supreme Court of Oklahoma has itself generally adopted the test of International Shos as to what constitutes 'doing business'. In its latest pronouncement on the subject, the Oklahoma Supreme Court adhered to the rule set forth in Wills v. National Mineral Co., (176 Okl. 193, 55 P.2d 449) supra, that: 'Doing business involves not only ownership, possession or control of property, but also such functions as dealing with others in reference thereto, the exercise of discretion, the making of business decisions, the execution of contracts, the marketing of products by advertsing and solicitation, collecting accounts, and kindred functions. Wherever an important combination of these functions is being performed, it is the doing of business at the place of such performance.' (Fawcett Publications Inc. v. Morris, Okl., 377 P.2d (42) at pages 45 and 46). It is true that the Oklahoma Supreme Court has recognized and followed the modern trend of broadening the application of the term 'doing business' so as to hold foreign corporations within strict limits of accountability in local courts.'[4]
 
 
 14
 The trial court found an important combination of the recited functions being performed in Oklahoma. We cannot find this clearly erroneous.
 
 
 15
 2. LIABILITY.
 
 
 16
 The following general findings were made by the court on the liability issue:
 
 
 17
 '(A) Plaintiffs successfully developed a process and machine which solved the problem of flange roll-over in rebuilt tractor rollers. This process heattreated the parent metal and low cost carbon wire used by plaintiffs. (B) Although plaintiffs' process and machine were originally developed solely for use in their own business, plaintiffs were encouraged by Caterpillar Tractor Company to market their heattreating machine, the Flange Master. (C) With the anticipated marketing of the Flange Master, plaintiffs contracted to market a welding wire under their own trade name of Traloy. (D) With the active help and support of Caterpillar Tractor Company, plaintiffs put their Flange Master on the market and stated an extensive advertising and sale campaingn. The evidence shows that their advertising was accurate and fair and that defendant knew that the acceptance of the Flange Master and Traloy by the industry would substantially reduce its sales of alloy wire. (E) For the purpose of neutralizing plaintiffs' efforts to sell their Flange Master and Traloy, and for the purpose of preventing acceptance of plaintiffs' process by the rebuilding industry, defendant attacked plaintiffs, their integrity, their method of doing business and their ability to do business. This attack consisted of an oral presentation to Caterpillar Tractor Company, designed to destroy its goodwill and assistance toward plaintiffs, and the publication and distribution throughout the world of letters and pamphlets containing false and misleading statements about plaintiffs and their business directed to customers and prospective customers of plaintiffs' machine and wire. (F) Defendant's acts were intentional and effective. By taking advantage of its established position as a technical advisor to the rebuilding industry, and by utilizing its network of field representatives and distributors, as well as by direct mailings to rebuilding shops throughout the world, defendant was able to virtually destroy the market for plaintiffs' Flange Master and Traloy wire.'
 
 
 18
 'The reputation of a tradesman in the sphere in which he earns his living is a valuable asset and is entitled to the protection of the law. In Moore v. Francis, 121 N.Y. 199, 23 N.E. 1127, 8 L.R.A. 214, 18 Am.St.Rep. 810, it is said (page 1128): 'Whatever words have a tendency to hurt, or are calculated to prejudice, a man who seeks his livelihood by any trade or business, are actionable.' * * * Newell on Libel and Slander, (4th Ed. 1924), p. 156, in discussing this matter places imputations against a man's business, profession or means of liveligood next to that of his life or liberty, and says that while it would be difficult to reconcile all of the various decisions upon this subject, the general rule is apparent that words are actionable which directly tend to the prejudice of one in his office, profession, trade or business, and an action will lie for any words which prejudice him in such trade or employment, and although the statements may seemingly concern the goods only they may so reflect upon the merchant himself as to amount to a libel per se. Many cases could be cited to support this rule, for it is one of long lineage as is evidenced by Linotype Co. v. British Empire Typesetting Machine Co., 1899, 81 L.T.,N.S., 331, 15 Times L.R. 524; Burnet v. Wells, 12 Mod. 420, 88 Eng. Reprint 1423; 36 Corpus Juris 1188, section 88 et seq.; Annotation, 48 L.R.A.,N.S., 1214.'[5]
 
 
 19
 The findings of the trial court establishing liability are supported by the evidence.
 
 
 20
 3. EVIDENCE.
 
 
 21
 (a) Admissibility of the evidence in bulk.
 
 
 22
 A great portion of the exhibit evidence containing depositions and exhibits attached to them were admitted in bulk. Stoody objects to this procedure.
 
 
 23
 Prior to the admission of the exhibit evidence, the following colloquy took place:
 
 
 24
 'It is my policy in a court case, I think you know, any instruments that either one of you want to introduce, I'll accept them and admit them into evidence with the reservation that I won't consider them if I come to the conclusion that they are incompetent, irrelevant or immaterial and that they would all go in by agreement of you gentlemen, if that is satisfactory, over the objection of each of you, so that way, you won't have to introduce every piece of paper separately, but that each instrument is offered. Do you have such instruments? * * * Do either of you raise any question about the competency, relevancy or materiality of any of those instruments?' The answer was no.
 
 
 25
 Then, the court and counsel discussed the many depositions and the documents identified with them. It was suggested by the court that counsel should sit down during recess and chronologically mark all the exhibits, including depositions, and 'that all the exhibits that either side offers be admitted subject to objection of the admissions only as to authenticity and that you still have the right and submit it with the objection on any other ground that you might have. And I won't consider them if I come to the conclusion you are right and they are not competent, relevant or material.' Counsel for appellant replied, 'Insofar as any document that has come to my attention during the course of the numerous depositions, we have no question about authenticity.' The court then replied, 'All right.'
 
 
 26
 Rule 43(a) F.R.Civ.P. in the main, puts admissibility on the basis of relevancy and materiality.
 
 
 27
 This court has said and reiterated, '* * * Rule 43(a) is 'a rule of admissibility, not a rule of exclusion' and it '* * * is designed to favor the reception of all the evidence 'which properly may be introduced in respect to the point in controversy." Mutual Life Insurance Company of New York v. Bohlman, 328 F.2d 289, 294 (1964).
 
 
 28
 (b) Expert testimony of marketing specialists.
 
 
 29
 The amount of damage was established by the expert testimony of Gustafson and Albert. The qualifications of the witnesses is set forth at length in the transcript. Each had experience and was recognized as either a market analyst or an economic feasibility expert. The damages were difficult to ascertain because the manufacture of the Flange Master was a new venture. The rebuilding business itself was in its infancy, but a substantial volume of business had been created by the continued experimentation of the repair shops. The trial court had found for Royer on the issue of liability.
 
 
 30
 " A witness is an expert witness and is qualified to give expert testimony if the judge finds that to perceive, know or understand the matter concerning which the witness is to testify, requires special knowledge, skill, experience or training and that the witness has the requisite special knowledge, skill, experience or training.' Restatement Model Code of Evidence, 402. 'Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible, is a preliminary question for the judge presiding at the trial, and his decision of it is conclusive, unless clearly shown to be erroneous as a matter of law.' We have recently said that 'the qualification of the witnesses to testify as experts and the weight to be given to their testimony were matters peculiarly for the trial court.' Korth v. Zion's Savings Bank & Trust Company, 10 Cir.,148 F.2d 170, 171, 172. Wigmore maintains that the trial court should be left to determine 'absolutely and eithout review' the qualifications of a particular witness. Wigmore on Evidence, 2d Ed., Vol. 1, 561.'[6]
 
 
 31
 In reviewing expert economist's testimony, Judge Lewis said, 'Whether or not the witness is qualified or whether or not the subject is one proper for expert testimony has repeatedly been held to be a matter largely within the trial court's discretion.' Barnes v. Smith, 305 F.2d 226, 232 (10 Cir. 1962).
 
 
 32
 'In testing the competency of the witness to give opinion testimony with respect to the highest price which might be obtained from a sale of the railroad, it would have to appear to the trial court: (1) that he had knowledge of the property to be sodl; (2) that he had knowledge of the various attendant circumstances and conditions which would affect the disposal of the property and determine the price; and (3) that he had the ability, by reason of his training and experience, to make a judgment which would be helpful to the court in determining the issue. See Wigmore on Evidence (3rd ed.) sections 711, 717, 1923, 1976. The competence of a witness to testify as to his opinion is largely within the discretion of the trial court; 'its ruling thereon will not be disturbed unless clearly erroneous." Spitzer v. Stichman, 278 F.2d 402, 409 (2 Cir. 1960).
 
 
 33
 In view of the trial court's consideration and acceptance of the expert testimony received by the master, we cannot say he was clearly erroneous.
 
 
 34
 (c) Was there substantial evidence to sustain the court's findings?
 
 
 35
 The volumes of testimony read by us on the issues of liability and damages leave us convinced that reasonable men might draw different inferences. We rely upon the findings of the lower court rather than substitute our judgment.
 
 
 36
 'Rule 52(a), Fed.Rules of Civ.Proc. 28 U.S.C.A., provides that in an action tried without a jury, the findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. It is well established that appellante courts are required to accept findings of fact of supported by substantial evidence and not clearly erroneous. Substantial evidence means more than a mere scintilla, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. If, from established facts, reasonable men might draw different inferences, appellate courts may not substitute their judgment for that of the trial court.' Federal Security Insurance Co. v. Smith, 259 F.2d 294, 295 (10 Cir. 1958).
 
 
 37
 The definitive case on the question of legal sufficiency of evidence to establish damage is well stated in Kobe, Inc. v. Dempsey Pump Co., 198 F.2d 416 (10 Cir. 1952) and the cases therein cited. In addition to setting down the general rules considered by this court, the Kobe case relied upon Bigelow v. R.K.O. Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, wherein the Supreme Court said:
 
 
 38
 'The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. * * *. 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of plaintiff's rights.'
 
 
 39
 We think the evidence in the instant case established the amount of the damages with the degree of certainty held to be sufficient to support an award of damages in the Kobe case.
 
 
 40
 (d) Punitive damage assessed by the court.
 
 
 41
 The court found this was an 'action in tort for unfair business competition and unfair trade practices,' and concluded, 'defendant's acts were deliberate, malicious and oppressive, and were intentionally designed to harm and damage plaintiffs.'
 
 
 42
 'Illustrative matter on which federal courts must follow the state law are: * * * the right to punitive damages * * *.' 1A Moore's Federal Practice P0.310, at 3401, 3403 (2nd ed. 1965).
 
 
 43
 '23 Okl.Stat.Ann. 9 provides that in an action for the breach of an obligation other than under a contract, 'where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant'. It has long been recognized that the theory of exemplary damages such as provided for in the foregoing statute is to set an example and punish the offender for the general benefit of the public. In Pure Oil Co. v. Quarles, 183 Okl. 418, 82 P.2d 970, 975, the court said that to entitle a plaintiff to recovery of exemplary damages, the proof must show some element of fraud, malice or oppression. The court then quoted the following statement from Keener Oil & Gas Co. v. Stewart, 172 Okl. 143, 45 P.2d 121: '* * * the act which constitutes the cause of action must be actuated by, or accompanied with, some evil intent, or must be the result of such gross negligence, such disregard of another's rights, as is deemed equivalent to such intent.' It is quite evident from these Oklahoma decisions that exemplary damages are not limited to cases where there is direct evidence of fraud, malice or gross negligence, but may be allowed when there is evidence of such reckless and wanton disregard of another's rights that malice and evil intent may be inferred.' Garland Coal & Mining Company v. Few, 267 F.2d 785, 790 (10 Cir. 1959).
 
 
 44
 A literal interpretation of the Oklahoma statute cited in Garland Coal & Mining, supra, would limit the assessment of exemplary damages to cases decided by juries.[7] In Pure Oil and Mining v. Quarles, 183 Okl. 418, 82 P.2d 970, 975, the Oklahoma Supreme Court said, '* * * we are unable to find merit in defendants' contention that only a jury may, under this statute, award exemplary damages; that the court in a tort action where jury is waived is unauthorized so to do. In such case the court in all respects exercises the functions of the jury, and its findings have the force and effect of a jury verdict. Sec. 20, art. 7, Const., Okl.St.Ann.Const. art. 7, 20.'
 
 
 45
 Therefore, the trial court properly considered the matter of exemplary damages.
 
 
 46
 (e) Opinion evidence refused.
 
 
 47
 Stoody offered testimony of an employee of the company who purchased the Flange Master franchise relative to the sales potential of Flange Master after the alleged defamation. The testimony would not have been for the entire period affected and concerned itself with the opinion of the promoter who was the new owner of the franchise.
 
 
 48
 Considering the nature of the testimony in the light of the discussion in 3(b) above relative to opinion evidence, abuse of discretion cannot be ascribed to the trial court.
 
 
 49
 4. CROSS APPEAL.
 
 
 50
 (a) Loss of Wire Sales.
 
 
 51
 In the cross appeal, cross appellant[8] contends the prospective market for Traloy wire as a part of a package sale was lost. The package sale contemplated a sale of Traloy wire with each Flange Master machine and a continuing market as the machine was used.
 
 
 52
 The record and the findings clearly show that cross appellee[9] would have been a competitor of Royer in the prospective wire market. The welding machine using the wire was not the product of either Royer or Stoody. The Flange Master tempered flanges that had been repaired by other machines which used the competitive wires.
 
 
 53
 The controversy was tried as a tort action which charged the disparagement of the quality of the Flange Master owned and produced by Royer. The court found Stoody liable for this wrongful act, but denied relief for the claimed loss of vendability of the Traloy wire which Royer proposed to sell as a package with the Flange Master.
 
 
 54
 ' One who without privilege to do so publishes an untrue statement of fact which is disparaging to the quality of another's * * * chattels or intangible things, under circumstances which would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof would be determined thereby, is liable for pecuniary loss resulting to the other from the impairment of vendability so caused.' III Restatement of the Law, Torts, 626.
 
 
 55
 'The pecuniary loss for which a publisher of disparaging matter is liable under the rules stated in Sections 624, and 626-627 is restricted to (a) that pecuniary loss which directly and immediately results from the impairment of the vendability of the thing in question caused by publication of the disparaging matter * * *.' III Restatement of the Law, Torts, 633.
 
 
 56
 Stoody and Royer were not competitors in the production of the Flange Master type of machine, therefore, no privileges could exist in favor of Stoody. The court found that the product had been defamed and the vendability of the machine diminished.
 
 
 57
 Stoody wire and Royer's Traloy were competing products. Therefore, Stoody was privileged to point out why its wire was superior.
 
 
 58
 The loss established by the impairment of vendability of the Flange Master did not result directly or immediately in a loss of wire sales that could be determined in the prospective market.
 
 
 59
 The master reported and the court confirmed the following findings and conclusions:
 
 
 60
 'Plaintiffs marketing of such Traloy wire was not a established business, and the market survey evidence for it is not based on reasonable expectations. Except for the relatively small specific loss of a sale to Darr Equipment Company of Dallas, no award is made for loss of shop wire sales, since such damages are unsupported and would be based on speculation.
 
 
 61
 Plaintiffs' alleged loss of future wire sales referred to in Finding of Fact 12(a) is not reasonably shown to exist or be the proximate result of defendant's wrongful acts. A determination on this record of the existence or extent of such alleged damages beyond the damages found in Finding of Fact 12(b) would be based upon speculation or guess and, therefore, such alleged damages are not capable of determination or award.'
 
 
 62
 We find there is substantial evidence in the record for the findings, and therefore, the conclusion of trial court is not clearly erroneous.
 
 
 63
 (b) Punitive damages.
 
 
 64
 The adequacy of the punitive damages awarded by the court is questioned by Royer.
 
 
 65
 'It is laid down as a general rule in many cases that exemplary damages are never recoverable as of right, unless awarded by statute, and that whether or not such damages are recoverable rests always in the discretion of the jury, or in the discretion of the court sitting as a jury * * *' 25 C.J.S. Damages 117(2). '* * * a claim for exemplary damages alone is an insufficient basis for a cause of action, and that in order to justify the recovery of punitive damages, there must be a showing of actual injury which would justify an award of actual or compensatory damages.' 17 A.L.R.2d 530. See Brown v. Higby, 191 Okl. 173, 127 P.2d 195, 196. 'This court has said many times that absent an award so excessive or inadequate as to shock the judicial conscience and raise an irresistible inference that passion, prejudice or another improper cause invaded the trial, the jury's determination of the amount of damages is inviolate.' Lane v. Gorman, 347 F.2d 332, 335 (10 Cir. 1965).
 
 
 66
 When the trial court sat as the trier of fact, it exercised the functions of a jury. Its findings will be given the force and effect of a jury verdict. Pure Oil Co. v. Quarles, 183 Okl. 418, 82 P.2d 970, 975.
 
 
 67
 We conclude, therefore, that the punitive damages assessed by the court are within the standard established by Lane v. Gorman, supra.
 
 
 68
 The appeal and cross appeal are denied and the trial court's judgment affirmed.
 
 
 69
 Affirmed.
 
 
 
 [1]
 Clady Royer, Blanton W. Hoover, and James T. Hoover, d/b/a Track Service Company, for brevity hereinafter referred to as Royer
 
 
 [2]
 Stoody Company, a foreign corporation, created, based in and doing business in the State of California, for brevity hereinafter referred to as Stoody
 
 
 [3]
 18 Okl.Stat.Ann. 1.204a(b) provides: 'In all cases where a cause of action has accrued or shall accrue to any person by reason of a foreign corporation doing business in this State, or having done business in this State, and such foreign corporation has removed or withdrawn from the State prior to August 7, 1947, service of summons or other process may be had upon the Secretary of State, and such service shall be sufficient to give jurisdiction of the person to any court in this State having jurisdiction of the subject matter whether sitting in the County where the Secretary of State is served or elsewhere in the State. Within three (3) days after such service upon the Secretary of State as aforesaid, it shall be the duty of the Secretary of State to notify such foreign corporation thereof by registered letter, (with request for return receipt) directed to such corporation at its office as shown by the articles of incorporation or charter or by the latest information officially filed in the office of the Secretary of State, in which letter shall be enclosed copy of the process or other papers served, and it shall be the duty of the plaintiff in any action in which said process shall be issued to pay to the Secretary of State for the use of the State, the sum of Three Dollars ($3.00) which shall be taxed as part of the taxable costs in said suit if plaintiff prevails therein. The Secretary of State shall keep a book to be called 'Process Book' in which shall be recorded alphabetically, the name of the plaintiff and defendant therein, the title of all cases in which processes have been served upon him, the text of the process so served and the return thereof, and the date and hour when such service was made.'
 
 
 [4]
 Walker v. General Features Corporation, 319 F.2d 583, 585, 586 (10 Cir. 1963)
 
 
 [5]
 Rosenberg v. J. C. Penney Co., 30 Cal.App.2d 609, 86 P.2d 696, 702 (1939)
 
 
 [6]
 Bratt v. Western Air Lines Inc., 155 F.2d 850, 853, 166 A.L.R. 1061 (10 Cir. 1946)
 
 
 [7]
 So far as we are able to ascertain from the record and transcript available, a jury trial was not demanded pursuant to Rule 38(b), F.R.Civ.P. Therefore, we conclude a jury trial was waived
 
 
 [8]
 Supra, note 1
 
 
 [9]
 Supra, note 2