377 F.2d 672
 GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellant,
v.
The FARMERS UNION COOPERATIVE ELEVATOR AND SHIPPING ASSOCIATION, KIRWIN, KANSAS, Appellee.
The FARMERS UNION COOPERATIVE ELEVATOR AND SHIPPING ASSOCIATION, KIRWIN, KANSAS, Appellant,
v.
GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellee.
 No. 8473.
 No. 8653.
 United States Court of Appeals Tenth Circuit.
 May 12, 1967.
 Rehearing Denied in No. 8473 June 14, 1967.
 
 1
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED J. L. Weigand, Jr., Wichita, Kan. (Weigand, Curfman, Brainerd, Harris & Kaufman, Wichita, Kan., with him on the brief), for Grain Dealers Mut. Ins. Co.
 
 
 2
 William H. Stowell and Keith G. Sebelius, Norton, Kan. (Stowell & Stowell, Phillipsburg, Kan., with them on the brief), for The Farmers Union Cooperative Elevator and Shipping Assn., Kirwin, Kan.
 
 
 3
 Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and CHRISTENSEN, District Judge.
 
 
 4
 CHRISTENSEN, District Judge.
 
 
 5
 In this diversity action on an insurance policy, Grain Dealers Mutual Insurance Company has appealed from a money judgment on the verdict in favor of The Farmers Union Cooperative Elevator and Shipping Association. Claimed errors on the principal appeal relate to the admission or exclusion of evidence, limitation of cross-examination, failure of the court to grant a directed verdict, judgment notwithstanding the verdict or a new trial, instructions to the jury, and the award of attorney's fees. By cross-appeal the elevator company complains because a larger award of attorney's fees was not made.
 
 
 6
 The insurance company had issued to the elevator company a policy of insurance which included protection against loss caused by "explosion damage" which was defined in the policy as "* * * direct loss to the property insured hereunder from explosion caused by the rapid combustion of any volatile or combustible substance, except Bi-Sulphide of Carbon."[1]
 
 
 7
 The evidence showed that on the morning of August 15, 1962, the elevator company's Bin 14 was filled to capacity with wheat when the operator began running wheat out of the bin by gravity feed. The operator thereupon left to pick up mail in town. Upon his return after an absence of some fifteen minutes he observed a long vertical crack in the "bellied out" wall of the bin some fifty feet in length. A number of eyewitnesses to the occurrence testified that the cracking was accompanied by a loud noise or bang resembling the sound of an explosion.
 
 
 8
 The elevator company asserted that the cracking of the bin had resulted from an explosion within the coverage of its insurance policy. The insurance company denied liability and later as plaintiff in the court below brought a declaratory judgment action by which it sought a determination that it was not liable. The elevator company filed an answer and counterclaim praying for judgment under its policy for loss "by reason of an explosion", together with attorney's fees.[2] The jury returned a verdict for the elevator company in the sum of $6,598.78 and judgment was entered accordingly. Subsequently, the court awarded the elevator company the additional amount of $2,375 as attorney's fees held to be recoverable under state law. The trial court denied the insurance company's motions for a directed verdict and for a judgment N.O.V., as well as its motion for a new trial.
 
 
 9
 The central issue in the court below was whether the damage to the bin was the result of "explosion caused by the rapid combustion of any volatile or combustible substance", or whether it was the result of weak or insufficient design or construction of the bin, a "bridging over of the wheat" and its sudden release, or some other cause. There was evidence tending to establish these facts, among others: At the time of the occurrence in question there was wheat dust in the bin which was susceptible of combustion and there was foreign material in the wheat capable of producing sparks sufficient to set off a dust explosion under suitable conditions. An explosion of dust in such bins was a recognized hazard in the grain elevator business. The cracking of Bin 14 was accompanied by a sudden and loud noise resembling the sound of a dynamite explosion. At the time of the occurrence there was a sound and feel of rushing air, pieces of concrete from the area of the crack were thrown as far as 35 or 40 feet away from the side of the bin. The circumstances involved sufficient suddenness, violence and noise as to impel persons in the vicinity spontaneously to run from the scene in fear for their safety. There was no careful inspection of the remaining wheat, the inside walls of the bin or the fragments of concrete falling from the side of the bin made by representatives of either party immediately following the occurrence which would have afforded positive assurance that there was no residual evidence of combustion. There was no claim made by either party, nor evidence to suggest, that if there were an explosion of any kind it could have been other than through combustion of dust particles. Aside from explosion the only two possible causes suggested by the insurance company were structural failure or the bridging over of the wheat and its sudden release, and there was substantial credible evidence to the effect that neither of these other causes was likely.
 
 
 10
 Sampson, a practical construction and business man having considerable experience with grain elevators testified that in his judgment the damage was caused by an explosion of wheat dust. There was also evidence that the field representative of the insurance company, after only a cursory view of the bin, implied a similar judgment. The insurance company produced a well qualified expert, Means, whose conclusions were to the contrary, but some uncertainties and qualifications expressed on cross-examination afforded at least some basis for questioning his opinion on the ultimate issue.
 
 
 11
 The insurance company argues that the most the evidence showed was loss by "a sudden bursting, noise, sudden cracking, dust" and that this only proved loss or damage and not the cause. It is urged particularly that there was no proof of burnt wheat, no residual odor of burning, no charring or blackening or scorching and no remnants of carbon on the wheat or on the walls of the bin. If, says appellant, there was evidence of an explosion there is no evidence that it was caused by the insured peril, namely, the rapid combustion of any volatile or combustible substance.
 
 
 12
 We think that properly to weigh this argument in relation to the motion for a directed verdict a distinction must be noted which will prove meaningful also with respect to the claimed errors in instructions. It is certainly true that to warrant recovery under the policy it would have to be shown by competent evidence that damages proximately resulted from an explosion as defined in the policy, that is, one caused by the rapid combustion of some volatile or combustible substance. The damage would not have to be caused, as suggested by appellant's argument, directly by burning even though burning involves combustion, since pressure caused by rapid combustion could be the immediate cause of recoverable damage. Hence, while proof of combustion, either direct or circumstantial, was essential, proof of damage directly caused by combustion or burning was not.
 
 
 13
 If the jury were bound as a matter of law to accept the testimony of the insurance company's expert that there could be no combustion of wheat dust without leaving visible signs and odors which necessarily would have been observed or noted, there would be considerable force in its position. But the jury did not have to accept these conclusions as a matter of law. Nor would it have been wholly illogical for them not to do so in view of the expert's concession that there could be dust explosions of varying degrees of intensity or size and that the observability of residual evidence would depend upon the severity of the explosion, the position of the explosion with reference to the level of the wheat, the handling of the wheat thereafter, and the degree and nature of subsequent observations. Especially was the testimony of the expert not conclusive in view of the fact that there had been no careful observation of the wheat or of the inside of the bin, or even of the fragments of concrete falling from the outside of the bin by the elevator company or by the insurance company. It is true that the inside of the bin was examined from the top by means of a light and that no odor was detected by employees of the elevator company, but there was evidence also that no special observations were made.
 
 
 14
 If reasonable minded persons in the exercise of fair, impartial judgment could decide the crucial issue in favor of the elevator company, drawing inferences from the established facts favorable to it and disregarding unfavorable inferences not evidentially compelled, the denial of the motions was not error. Peter Kiewit Sons Company v. Clayton, 366 F.2d 551 (10th Cir. 1966).
 
 
 15
 In Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co., 257 F.2d 93, 76 A.L.R.2d 385 (10th Cir. 1958), the facts and issues of which were singularly similar to those here, it was held that the jury was not bound to accept conclusions of experts and that taking a view of the evidence most favorable to the prevailing party there was substantial evidence to support the jury's verdict based upon the theory that the damage was caused by explosion of wheat dust. In some respects the facts in the case at bar more clearly indicate an explosion than the facts in the former case, since here there was evidence strongly negating the possibility of a structural failure and the evidence is less controverted that there was an unusual noise at the time of the break. In the former case, as well as here, "there was no evidence of any flash, odor, burning or charring" and this court there refused to attach to such circumstance the conclusive effect appellant now urges. It is our opinion that the evidence is sufficient to sustain the verdict and that the rulings of the trial court on the motions of the insurance company were correct.
 
 
 16
 The insurance company complains because lay witnesses repeatedly referred to the occurrence as "an explosion". We do not think there was prejudicial error in connection with such answers. Upon timely objection or motion to strike the court appropriately indicated that the expression would be taken as merely descriptive of the sound heard by the witnesses. No objection or motion to strike was made in many instances and the insurance company's counsel himself elicited similar description from most of the witnesses on cross-examination.
 
 
 17
 The insurance company further says that the trial court erred in admitting incompetent testimony of the claimed expert, Sampson. The principal complaint seems to be that a prior experience on the basis of which it was sought by the elevator company to support his qualifications involved a hearsay declaration. The court struck the hearsay declaration but held that Sampson was qualified to express an opinion as to whether the occurrence in question was an explosion. The strict hearsay rule does not necessarily apply to expert testimony. See United States v. Sowards, 339 F.2d 401 (10th Cir. 1964). However, without questioning the court's order striking the specific hearsay in question, we think the trial court did not abuse its discretion in permitting Sampson to testify as an expert otherwise. The fact that he, as a third party defendant, was interested in the outcome of the case went to the question of weight and not admissibility. Practical experience may be the basis of qualification as well as academic training. Bratt v. Western Air Lines, 155 F.2d 850, 166 A.L.R. 1061 (10th Cir. 1946); Padgett v. Buxton-Smith Mercantile Company, 262 F.2d 39 (10th Cir. 1958). Sampson clearly was qualified to express an opinion ruling out structural failure or the possible effect of a release of bridged wheat upon the structure. These were the only other possibilities expressly suggested by the insurance company's pleadings[3] and evidence. And we think that Sampson's exposure to the explosion problem was such as to render his acceptance of this alternative of possible probative value. The qualification of experts is peculiarly within the discretion of the trial court and its rulings are reversible only for an abuse of discretion. Miller's Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co., 257 F.2d 93 (10th Cir. 1958), supra.
 
 
 18
 It is further asserted by the insurance company that it was erroneously precluded from cross-examining Sampson relative to defects which were found in an elevator which had been built by his company in another community. We find no error in the court's exercise of its discretion in this respect, and particularly we hold that the court was correct in precluding cross-examination concerning the outcome of other litigation between Sampson's company and strangers to the instant suit concerning defects in another elevator on the basis of which liability had been sustained in Winn v. Sampson Construction Company, 194 Kan. 136, 398 P.2d 272 (1965).
 
 
 19
 The fact that evidence on cross-examination is immaterial and irrelevant to the issue of negligence does not make it inadmissible if otherwise relevant and material on the credibility of the witness. Atkinson v. Atchison, Topeka & Santa Fe Ry. Co., 197 F.2d 244 (10th Cir. 1952). Whether there had been a structural failure of other elevators built by Sampson could be deemed relevant to the credibility of the witness and, indeed, the court did not preclude inquiry concerning this general subject. But it did sustain objections to such questions as, "Has there ever been a judicial determination that any of them were improperly designed" and "If the Kansas Supreme Court said that one of them had been improperly designed would you then tell us —". The decision of the Kansas Supreme Court between different parties on different points and involving different issues was not binding in the instant case and its impeaching effect was so far incompetent or collateral as to warrant the court's rulings. Examination with reference to collateral matters rests largely within the discretion of the trial court and its ruling will not be disputed in the absence of a clear abuse of discretion. Marteney v. United States, 218 F.2d 258 (10th Cir. 1954), cert. den. 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745 (1955).
 
 
 20
 Complaint is made by the insurance company that its expert witness, White, was precluded from testifying. He originally had been listed in pretrial proceedings among the witnesses to be called by the insurance company, but thereafter the elevator company's counsel was notified that White would not be called and that probably Means, another expert, would be called in his place. No further notice was given with respect to White, nor was it definitely indicated by the insurance company that Means would be called. The pre-trial order, consistent with the local rule, indicated that the names of witnesses would be furnished to opposing parties, and there was evidence that the elevator company relied upon such lists in its decision whether to take depositions. The trial court concluded that leave to call White should not be granted but over the objection of the elevator company permitted Means to testify as an expert on behalf of the insurance company. We think the court was not unreasonable in adhering to the necessity of notice and that it appropriately exercised its discretion in precluding the testimony of White while permitting the insurance company to call its other expert concerning whom it had at least given notice of the possibility. See Case v. Abrams, 352 F.2d 193 (10th Cir. 1965); Globe Cereal Mills v. Scrivener, 240 F.2d 330 (10th Cir. 1956). Cf. Clark v. Pennsylvania Railroad Company, 328 F.2d 591 (2d Cir. 1964).
 
 
 21
 It is claimed that the trial court erred in failing to give certain requested instructions concerning circumstantial evidence and inferences to be drawn by the jury, and in failing to charge the jury particularly that where the evidence was equally consistent with damage caused by either a covered or a noncovered peril, the insured had failed to sustain its burden of proof. We believe the essential substance of these requests was given by the court. There was no requirement that they be given in the precise terms or in the somewhat argumentative detail requested.
 
 
 22
 The insurance company strenuously contends that the trial court erred in instructing the jury that the coverage provisions of the policy relating to the meaning of an explosion were ambiguous and that the trial court invaded the province of the jury and prejudiciously submitted the theory of the elevator company, withdrawing from the jury's consideration disputed facts supported by competent evidence.
 
 
 23
 We question whether the defendant's exceptions to the instructions were adequately preserved in view of their being noted with specificity only during the record discussion preceding the actual giving of the charge, with only a general reference thereafter. See generally Dunn v. St. Louis-San Francisco Railway Co., 370 F.2d 681 (10th Cir. 1966); Hayes v. United States, 238 F.2d 318 (10th Cir. 1956), cert. den. 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142. Nonetheless we have carefully examined the instruction to determine whether they could be deemed prejudiciously erroneous.
 
 
 24
 It no doubt would have been better to have omitted from instruction number 11 the reference to the necessity that language in a policy of insurance be clear and unambiguous and that any reasonable doubt as to its meaning must be resolved in favor of the insured. This statement no doubt was occasioned by the emphasis placed in the insurance company's argument upon the absence of direct proof of residuals from any combustion. What the court really was telling the jury was that, in view of the rules of interpretation which governed, direct damage from fire or combustion was not required nor were residual evidences of burning required, and that "if the insurance company had intended to exclude from coverage certain explosions where evidence of a burning, a flash, an odor, a charring or a fire is absent, then it should have clearly and definitely so stated in the policy".
 
 
 25
 But the court did not fail to make it clear that there would have to be proof by a preponderance of the evidence of an explosion from combustion to warrant a recovery. In instruction number 10 the court had said:
 
 
 26
 "Now it is the contention of the Grain Dealers Mutual that the rupture in the wall of bin 14 of defendant's elevator was not caused by the rapid combustion of any volatile or combustible substance but that it resulted from conditions and circumstances not covered under the terms of the policy of insurance. Now insurance policies are contracts and agreements by the terms of which both parties are bound and are to be construed in their plain, ordinary and usual sense. And of course, under such circumstances the Farmers Union Coop must prove that there was an explosion caused by the rapid combustion of a volatile or combustible substance which was a proximate cause of the damage which it sustained on or about August 15, 1962. It has only the burden of proving that an explosion occurred which was covered within the terms of the policy and need not prove in what particular way the explosion was caused."
 
 
 27
 In instruction number 12 it was stated that "It is for you, the jury, to determine from all the evidence and the reasonable inferences that may be drawn therefrom whether or not there was in fact a rapid combustion by a volatile or combustible substance which caused the rupture." We do not think it can fairly be said that the insurance company's theory was not properly submitted to the jury, particularly in view of the fact that the great bulk of the evidence as well as the argument was directed to the question, which hardly could have been misunderstood, whether the claimed damage resulted from an explosion caused by the rapid combustion of any combustible substance as claimed by the elevator company or whether it was caused by a released bridge of wheat, structural failure or some other circumstance as claimed by the insurance company.
 
 
 28
 Although it might otherwise be thought that the trial court in instruction number 11 overemphasized the non-determinative effect of the lack of observed combustion residuals, there had been constant insistence by the insurance company's counsel that this circumstance was conclusive. The court was not unjustified in attempting to put the problem in proper perspective. It was made clear that the ultimate question was not whether any explosion or other occurrence left residual evidence of combustion which was actually observed, but whether in view of the absence of observed evidence of combustion but in view also of all of the other surrounding circumstances in evidence there was in fact an explosion caused by rapid combustion of wheat dust.[4]
 
 
 29
 The insurance company takes the position that the court erred as a matter of law in awarding an attorney's fee to the elevator company under K.S.A. 40-256[5] because it was not shown that the insurance company failed to pay the claim without just cause. The insurance company further argues that since the elevator company was the defendant rather than the plaintiff in this action, a condition of the statute was not met.
 
 
 30
 As a counterclaimant the elevator company sought damages against the insurance company which had initiated the declaratory judgment action. It thus was seeking relief in the position of a plaintiff and we see no significance in the fact that its claim was set out as a counterclaim. Connecticut Fire Ins. Co. v. Reliance Ins. Co. of Madison, Wis., 208 F.Supp. 20 (D.Kan.1962). Cf. Close-Smith v. Conley, 230 F.Supp. 411 (D.Oregon 1964).
 
 
 31
 And we think there was substantial evidence to support the finding of the trial court that the insurance company without just cause failed to pay the elevator company's claim. It is true that the factual issue between the parties involved no foregone conclusion and was contestable before a jury. But this is true more or less with respect to every claim on which a jury question is presented and we do not believe that the intent of the Kansas statute was to preclude the recovery of an attorney's fee in all of such cases. On the other hand, there was evidence from which the court reasonably could have found that the insurance company had made up its mind that it would not pay the claim irrespective of what an investigation might disclose. It declined to send out an adjuster and indicated shortly after the occurrence that if the elevator company wanted anything it would have to sue. While properly relying in defense upon the alleged failure of the elevator company to make any investigation to determine whether there was any residual evidence of combustion, the insurance company itself declined to make any meaningful check on the point notwithstanding an indication from its field man at one time that he thought there had been an explosion.
 
 
 32
 Finally, on the cross-appeal of the elevator company questioning the amount of the attorney's fees which the court awarded:
 
 
 33
 The motion of the insurance company to dismiss is denied, and we consider the merits of the cross-appeal.[6]
 
 
 34
 Counsel for elevator company produced evidence indicating that based upon time spent in representing the elevator company in this and related matters, they would be entitled at the usual rate to compensation and expenses totaling $9,593.88. The trial court awarded $2,375.
 
 
 35
 In Attebery v. M. F. A. Mutual Insurance Company, 191 Kan. 178, 380 P.2d 327 (1963), the Kansas Supreme Court indicated that the amount awarded was not necessarily to be determined by the relationship between the amount recovered and the amount tendered but said: "The real test is a value of the services performed by the attorney in behalf of his client." This was elaborated upon in Barnes v. Mid-Continent Casualty Company, 192 Kan. 401, 388 P.2d 642 (1964), indicating that in addition to the results secured, there should be considered the time and trouble involved, the extent of services rendered, the nature and importance of the litigation, the skill and experience of counsel and various other circumstances. Here the recovery was substantially less than the fees and expenses claimed. The total claim was based upon the services of two attorneys who were not members of the same firm and who had included time and expenses in state court litigation prosecuted by the elevator company concerning the same subject matter but which was of questionable necessity or benefit in relation to the instant case. The statute warrants the allowance of an attorney's fee based upon representation of a single attorney or firm. Wolf v. Mutual Benefit Health and Accident Ass'n, 188 Kan. 694, 366 P.2d 219 (1961). See also Akins v. Illinois Bankers Life Assur. Co., 166 Kan. 648, 203 P.2d 180 (1949). We are not impressed with the elevator company's argument that since its attorneys were associated on this particular case they represented a firm within the contemplation of Wolf. Nor do we think the court was required to compensate for all of the time devoted by these attorneys to extensive proceedings collateral to the present case, a substantial portion of which was abortive or for the unsuccessful purpose of avoiding federal jurisdiction. We think there could be properly weighed the necessity and productivity of the hours claimed in relationship to the circumstances of the litigation before it.
 
 
 36
 The reasonable value of attorney's fees under legislative mandate rests largely in the discretion of the trial court and such allowance will not be reversed on appellate review when supported by competent testimony. Barnes v. Mid-Continent Casualty Company, 192 Kan. 401, 388 P.2d 642, supra. While we might not fix the same fee if sitting as fact finders, we cannot say that the trial court abused its discretion in making the award it did nor that such award is not supported by substantial evidence.
 
 
 37
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 There is no suggestion in the record that the explosion here in question could have been caused by bisulphide of carbon
 
 
 [2]
 A directed verdict of no cause of action was granted by the trial court upon the elevator company's third party complaint against Sampson Construction Co., Inc. which had constructed the bin, and no appeal from that ruling has been taken
 
 
 [3]
 In its complaint the insurance company alleged: 6. That on or about August 15, 1962, a concrete bin forming a part of the insured premises failed and collapsed, which was caused by defective, weak and insufficient design and construction and by being subjected to loads, stresses and strains beyond its structural capacity. 7. That the defendant has claimed that damages to the insured premises was caused by explosion as defined in said policy * * *"
 
 
 [4]
 Compare H. Schumacher Oil Works v. Hartford Fire Ins. Co., 239 F.2d 836 (5th Cir. 1956) where a directed verdict was reversed because on the issue of whether there had been a "fire" the trial court apparently considered as determinative the fact that no glow actually had been observed. The reviewing court said, "* * * the law does not require that a glow actually be observed, but merely that if there had been an observer in the middle of the pile, who secured his vantage without introducing any extraneous oxygen, he could have observed an actual glow."
 
 
 [5]
 "* * * in all actions * * * in which judgment is rendered against any insurance company * * * if it appear from the evidence that such company * * * has refused without just cause or excuse to pay the full amount of such loss, the court in rendering judgment shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs. * * *."
 
 
 [6]
 We cannot accept the contention that under the circumstances of this case the clerk's minute of the court's oral finding on attorney's fees set in motion the time for appeal from the award